IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| THE HILB GROUP OF NEW JERSEY, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 3:22cv124<br>)<br>) |
| EVE VACCARO, | )<br>)<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiff The Hilb Group of New Jersey, LLC ("THG-NJ" or "Plaintiff"), by counsel, sets forth the following as its Complaint against Defendant Eve Vaccaro ("Vaccaro").

## INTRODUCTION

1. This is an action to stop unfair competition by a skilled and experienced transportation insurance account executive. As a condition of her continued employment with THG-NJ, Vaccaro executed a Confidentiality and Non-Solicitation Agreement, which prohibited her from soliciting and servicing her former THG-NJ customers for two years after the end of her employment. Vaccaro voluntarily "retired" from THG-NJ in December 2020, receiving a separation payment of more than $60,000.00. Instead of retiring as promised, however, Vaccaro returned to the insurance brokerage industry and began soliciting her former THG-NJ customers—all while falsely assuring THG-NJ of her compliance with her restrictive covenant obligations. Vaccaro's actions already have caused THG-NJ significant damages and continue to threaten THG-NJ's legitimate business interests. THG-NJ thus has no choice but to seek redress from this Court to (1) enjoin Vaccaro from continuing to flout her contractual obligations; (2) require

1

Vaccaro to comply with her contractual obligations in accordance with their terms; and (3) award damages for the injuries she already has caused.

## PARTIES

2. THG-NJ is a Delaware limited liability company and is a subsidiary of The Hilb Group, LLC ("THG"). THG-NJ is authorized to conduct business in New Jersey, and maintains an office at 1 International Boulevard, Suite 405, Manwah, New Jersey 07430.

3. THG-NJ's sole member is The Hilb Group Operating Company, LLC, which is a Delaware limited liability company.

4. The Hilb Group Operating Company, LLC's sole member is THG, which is a Delaware limited liability company.

5. THG's sole member is THG Intermediate, LLC, which is a Delaware limited liability company.

6. THG Intermediate, LLC's sole member is THG Acquisition Company, LLC, which is a Delaware limited liability company.

7. THG Acquisition Company, LLC's sole member is Harpoon Bidco, Inc., which is a Delaware corporation with its principal place of business in Virginia.

8. Upon information and belief, Vaccaro is a Connecticut resident and domiciliary who resides and may be served with process at 44 Arthur Place, Stamford, Connecticut 06906-1801.

9. Vaccaro is a skilled insurance account executive with more than thirty years of experience in providing insurance products and services to companies in the transportation industry.

10. In or around April 2007, Vaccaro began working for Stone Transportation Agency ("Stone"), an insurance brokerage company specializing in insurance for transportation companies, including taxi, bus, limousine, trucking, and paratransit companies.

11. THG-NJ purchased Stone's assets in April 2016, after which Vaccaro worked for THG-NJ as an "Account Executive" until her voluntary "retirement" in December 2020.

**JURISDICTION & VENUE**

12. Vaccaro executed a Confidentiality and Non-Solicitation Agreement (the "Restrictive Covenant Agreement") effective March 19, 2019 (attached as Exhibit 1), which forms the basis of this lawsuit.

13. This Court has personal jurisdiction over Vaccaro because the Restrictive Covenant Agreement provides: "[T]he Company and [Vaccaro] hereby consent to the exclusive jurisdiction of the courts of the Commonwealth of Virginia located in the City of Richmond and of the United States District Court for the Eastern District of Virginia (to the extent such courts have subject matter jurisdiction) in connection with any action, suit, or other proceeding in connection with, arising out of, or relating to this Agreement, and agree not to assert in any such action, suit, or proceeding that it, he or she is not personally subject to the jurisdiction of such courts, that the action, suit, or proceeding is brought in an inconvenient forum, or that venue of the action, suit, or proceeding is improper." Restrictive Covenant Agreement, ¶ 15.

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and is between citizens of different states.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Vaccaro is subject to this Court's personal jurisdiction with respect to this lawsuit under Paragraph 15 of the

Restrictive Covenant Agreement and because she contractually agreed to exclusive venue in this Court.

## FACTUAL BACKGROUND

### THG-NJ's Business and Customer Relationships

16. THG-NJ is in the insurance brokerage, administration, and consulting business. THG-NJ's specialty groups include the transportation industry. THG-NJ provides a full range of insurance products and solutions to customers in the transportation industry, including charter bus insurance, taxi insurance, paratransit, social service, ambulance and ambulette insurance, school bus insurance, limousine insurance, trucking insurance and loss control prevention.

17. THG-NJ's transportation specialists are experts in fuel and labor costs, potential risks and claims frequency. THG-NJ's licensed transportation brokers and account executives assist clients in developing strategies and solutions to manage risks unique to this industry. Generally, THG-NJ renews policies with its transportation industry customers on an annual or bi-annual basis.

18. In part due to its cyclical nature, the transportation insurance brokerage and consulting business is extremely competitive. Success in the industry depends in large part on customer relationships and goodwill. Once a customer discontinues its policy or consulting relationship with a particular agency, the customer is unlikely to return.

19. Moreover, an agency's transportation insurance brokerage and consulting business often is grown through referrals. The loss of one customer's relationship has a ripple effect of harming the agency's future ability to grow and to compete in the marketplace.

**Vaccaro's Employment with THG-NJ**

20. Because of the highly competitive nature of its business, THG and its affiliated entities, including THG-NJ, frequently engage in strategic acquisitions to strengthen their position in the marketplace. THG is primarily an acquisition company, which pays market consideration for its various insurance asset acquisitions.

21. Around April 1, 2016, THG-NJ purchased substantially all of Stone's assets through an asset purchase agreement.

22. At the time of the Stone acquisition, Vaccaro worked for Stone as an Account Executive.

23. Her duties included soliciting and brokering sales of insurance and other products to new and existing customers, selling and providing consulting services, managing existing customer relationships, assisting customers with renewals, assisting customers with claims, and providing other services to ensure customer satisfaction.

24. Vaccaro focused her work on customers in the transportation industry, including taxi, limousine and livery companies.

25. In the Stone acquisition, THG-NJ acquired all of Stone's client accounts and relationships, including all insurance expirations and rights of renewal and all of the associated goodwill, confidential information, files, claim files, books, records, ledgers, correspondence, and other records.

26. THG-NJ's acquisition included Stone's entire book of business, including the goodwill associated with each of Stone's customers which Vaccaro serviced and supported.

27. Immediately following the Stone acquisition, THG-NJ began integrating Stone's business. The integration process included transitioning Stone's customer accounts to THG-NJ.

28. As part of the integration, Vaccaro became an employee of THG-NJ, holding the position of "Account Executive."

29. As an Account Executive, Vaccaro served in a client-facing role for THG-NJ. Her duties included soliciting and brokering sales of insurance and other products to new and existing customers, selling and providing consulting services, managing existing customer relationships, assisting customers with renewals, assisting customers with claims, and providing other services to ensure customer satisfaction.

30. Vaccaro developed and maintained extensive client relationships and contacts with THG-NJ's customers. For all intents and purposes, she was the "face" of THG-NJ for many of THG-NJ's customer relationships, including those she would later solicit and service in violation of her restrictive covenant obligations.

### THG-NJ's Efforts to Protect Its Customer Relationships and Goodwill

31. Customer relationships and goodwill are of the utmost importance in THG-NJ's industry. Accordingly, THG-NJ invests substantial resources into its brokers and business producers to establish goodwill and strong relationships with customers. This makes THG-NJ vulnerable to brokers, account executives, and other business producers and supporters who can leverage those relationships.

32. As such, THG-NJ has a legitimate business interest in protecting its confidential information, relationships with customers and prospective customers, and customer goodwill, including the confidential information, relationships and goodwill it acquired as a result of the Stone acquisition.

33. To protect these legitimate business interests, and as a condition of her continued employment with THG-NJ, THG-NJ required Vaccaro to execute the Restrictive Covenant Agreement effective March 19, 2019. Ex. 1.

34. Vaccaro acknowledged that her execution of the Restrictive Covenant Agreement was a condition precedent to her continued employment with THG-NJ. *Id.*, at ¶ 2.

35. She also acknowledged that, by virtue of her continued employment, she would have extensive contacts with THG-NJ's customers and would benefit from THG-NJ's customer relationships and goodwill. *Id.*, at 1.

36. In the Restrictive Covenant Agreement, Vaccaro further recognized that THG-NJ expended considerable effort and expense to develop its customer relationships, which relationships are a major part of THG-NJ's value. *Id.*, at ¶ 5.

37. Accordingly, she agreed that THG-NJ has a reasonable, necessary, and legitimate business interest in protecting the customer relationships which she serviced and supported as a THG-NJ employee. *Id.*, at ¶ 9.

38. To protect those necessary and legitimate business interests, the Restrictive Covenant Agreement required Vaccaro to abide by certain non-solicitation obligations. *Id.*, at ¶¶ 4-5.

39. In the Restrictive Covenant Agreement, Vaccaro agreed that for two (2) years following the cessation of her employment with THG-NJ, she would not, directly or indirectly:

   A. Have contact with, solicit, or assist in the solicitation of any of the Company's customers (as defined below) for the purpose of selling or providing any Competitive Products or Services (as defined below);

   B. Provide Competitive Products or Services to any Customer for or on behalf of any person or entity other than the Company; or

      C.      Induce or attempt to induce any of the Company's Customers to cease doing business in whole or in part with the Company.

*Id.*, at ¶ 5.

40. The Restrictive Covenant Agreement defined "Competitive Products or Services" as "any services or products competitive with any product or service sold, offered for sale, or under development by [THG-NJ] as of the date of [Vaccaro's] termination of employment." *Id.*

41. Under the Restrictive Covenant Agreement, "Customer" means "as of the date of termination of [Vaccaro's] employment, any individual or entity that is a customer of [THG-NJ] with whom [Vaccaro] (i) had contact or communication within the immediately preceding twenty-four (24) month period as a result of employment with [THG-NJ]; (ii) for whom [Vaccaro] had supervisory, sales or service responsibility within the immediately preceding twenty-four (24) month period as a result of employment with [THG-NJ]; or (iii) about whom [Vaccaro] possessed Confidential Information or Third Party Information (including, but not limited to, risk management characteristics) as a result of employment with THG-NJ." *Id.*

42. At the time Vaccaro executed the Restrictive Covenant Agreement, she was fully aware of the non-solicitation obligations it imposed on her.

43. At all times, Vaccaro has remained fully aware of the non-solicitation obligations the Restrictive Covenant Agreement imposed on her.

44. Non-solicitation covenants, such as those in the Restrictive Covenant Agreement, are standard for producers, account executives, and other "client-facing" positions in the insurance brokerage business.

45. THG-NJ required Vaccaro to enter into the Restrictive Covenant Agreement as a condition of her continued employment with THG-NJ to protect itself from unfair competition by Vaccaro.

### **Vaccaro "Retires" from THG-NJ**

46.     In September 2020, Vaccaro decided to participate in THG's voluntary separation and retirement plan and requested December 31, 2020 as her retirement date.

47.     In connection with her retirement on December 31, 2020, Vaccaro received a severance package of more than $60,000.00, commensurate with her years of service.

48.     Vaccaro executed a Confidential Voluntary Separation and Release Agreement, which expressly provided that it did not supersede or otherwise replace Vaccaro's obligations under the Restrictive Covenant Agreement.

### **Vaccaro "Unretires" and Returns to the Insurance Brokerage Industry**

49.     Vaccaro did not stay retired from the insurance brokerage industry for long.

50.     On or around June 22, 2021, Vaccaro e-mailed THG's Director of Human Resources Rob Patton ("Patton") asking whether she had any non-competition agreement with THG-NJ.  She also informed Patton that she was looking for employment in the insurance industry (Exhibit 2).

51.     Patton responded promptly, explaining that Vaccaro was not subject to a non-competition covenant but that she owed THG-NJ confidentiality and non-solicitation obligations. Patton specifically noted that those obligations were not limited solely to "solicitation" but also prohibited her from providing "Competitive Products or Services to any Customer," as those terms are defined in her Restrictive Covenant Agreement.  Patton told Vaccaro that, as long as she did not violate those restrictions, she could work in the insurance industry.  *Id.*

52.     Patton sent Vaccaro a copy of the Restrictive Covenant Agreement, noting that it had not yet expired and was still enforceable.  *Id.*

53. Despite knowledge of her obligations under the Restrictive Covenant Agreement, Vaccaro decided to pursue her former THG-NJ customers on behalf of another insurance broker.

**Vaccaro Falsely Assures THG-NJ
that She Is Complying with Her Restrictive Covenant Obligations**

54. In or around late-August 2021, THG-NJ received reliable information that Vaccaro was working with Bernard F. Halligan (one of Stone's former owners) and contacting her former THG-NJ customers in an effort take their business away from THG-NJ.

55. Specifically, THG-NJ learned that Vaccaro had been in contact with (1) USA Taxi, (2) Fair Connecticut Limousine, and (3) Eveready Transportation, Inc.—all of which were "Customers" under her Restrictive Covenant Agreement. Upon information and belief, Vaccaro intended to re-establish her relationship with these clients for the purpose of taking their business from THG-NJ.

56. Based on the information it received, THG-NJ had serious concerns that Vaccaro was violating her obligations under the Restrictive Covenant Agreement.

57. To address THG-NJ's concerns, on August 26, 2021, THG-NJ's counsel sent Vaccaro a letter demanding her compliance with the Restrictive Covenant Agreement (Exhibit 3).

58. In the letter, THG-NJ's counsel demanded, among other things, that Vaccaro cease violating her contractual obligations and to identify all THG-NJ customers with whom she has had contact regarding insurance products or services since her departure from THG-NJ. *Id.*

59. Vaccaro responded to the letter through her counsel on August 30, 2021. Vaccaro's counsel represented that Vaccaro was not violating her restrictive covenant obligations and requested THG-NJ's counsel to identify the specific clients which THG-NJ believed Vaccaro had solicited (Exhibit 4).

60. On September 2, 2021, THG-NJ's counsel identified those specific clients for Vaccaro's counsel, including an additional client—Miguel A. Santacruz—of which THG-NJ learned after its counsel sent the letter to Vaccaro. THG-NJ's counsel also asked that Vaccaro provide a written assurance that she has not violated, and would continue to abide by, her restrictive covenant obligations. *Id.*

61. Vaccaro refused to provide a written assurance or to identify clients with whom she had had contact. Instead, her counsel responded only that she "has not violated any of her covenants and will continue not to solicit any clients of [THG-NJ]." *Id.*

62. THG-NJ relied on Vaccaro's counsel's representation that she would "continue not to solicit any clients of [THG-NJ]."

63. Based on that representation, THG-NJ decided not to pursue further action against Vaccaro at that time.

64. As THG-NJ recently learned, however, that representation was false.

65. When she directed her counsel to respond to THG-NJ's counsel, Vaccaro had no intention to abide by her obligations under the Restrictive Covenant Agreement.

66. She in fact has not abided by those obligations.

67. Instead, Vaccaro has violated, and continues to violate, her non-solicitation obligations under the Restrictive Covenant Agreement.

68. Contrary to her counsel's representation, Vaccaro has continued soliciting her former THG-NJ customers and has been providing competitive insurance services and products to them—all while continuing to falsely claim her compliance with the Restrictive Covenant Agreement. Her recent efforts to take business from THG-NJ have been successful.

11

**Vaccaro's Continued Violations of the Restrictive Covenant Agreement**

69. Vaccaro currently is employed as a Senior Account Executive by Lux Insurance ("Lux") in East Longmeadow, Connecticut.

70. Lux, like THG-NJ, is in the insurance brokerage, administration, and consulting business. Like THG-NJ, Lux specializes in insurance products and services for customers in the transportation industry, including taxi companies, limousine companies, rideshare businesses, trucking companies and other similar companies. Lux specifically advertises its transportation insurance services on its website. https://www.lux-agencies.com/commercial_auto/.

71. THG-NJ recently lost two customers to Lux—(1) Norwalk Taxi and (2) USA Tax—each of which is a "Customer" as defined in the Restrictive Covenant Agreement.

72. The annual commission value of the three customers THG-NJ has lost to Lux is considerable and, due to the nature of the insurance brokerage business, may lead to future losses.

73. Upon information and belief, Vaccaro assisted Lux in taking these two customers from THG-NJ in violation of the Restrictive Covenant Agreement.

74. She also has been providing competitive products and services to these customers for Lux in violation of her contractual obligations to THG-NJ.

75. On February 1, 2022, upon learning of Vaccaro's likely involvement in taking the (1) Norwalk Taxi and (2) USA Taxi accounts from THG-NJ, THG-NJ's counsel contacted Vaccaro's counsel demanding that Vaccaro cease violating her restrictive covenant obligations (Exhibit 5).

76. In response, Vaccaro's counsel stated that she "denies [THG-NJ's] claim that she is violating a restrictive covenant obligation." *Id.*

77. THG-NJ's counsel identified the specific clients which had switched their accounts from THG-NJ to Lux and asked Vaccaro to attest that she neither assisted Lux in soliciting those clients nor has been servicing their accounts on Lux's behalf. *Id.*

78. Vaccaro refused to provide the attestation, with her counsel asserting that "[Vaccaro's] position remains unchanged" and that "we are not obligated to respond to your email below." *Id.*

79. Given Vaccaro's refusal to provide sufficient assurances that she did not solicit and was not servicing the two clients that left THG-NJ for Lux, THG-NJ remained concerned about Vaccaro's contractual violations.

80. THG-NJ since has confirmed that Vaccaro's representation and denials are false.

81. On or around February 11, 2022, a THG-NJ employee spoke with a representative of Casino Cab Co.—another "Customer" under the Restrictive Covenant Agreement—regarding a policy renewal. The Casino Cab Co. representative mentioned that Vaccaro called him in late 2021 offering him lower insurance rates. He, however, declined to leave THG-NJ.

82. Additionally, Vaccaro has been contacting and soliciting Alliance Global Associates, yet another "Customer" under the Restrictive Covenant Agreement, to move its business from THG-NJ to Lux. Alliance Global Associates' policies are coming up for renewal, and Vaccaro has been trying to obtain a Broker of Record letter for these policies on Lux's behalf.

83. Vaccaro's actions demonstrate that she has not complied with her obligations under the Restrictive Covenant Agreement and has no intention to comply with them in the future.

84. Upon information and belief, Vaccaro has solicited and continues to solicit other THG-NJ "Customers" to provide "Competitive Products and Services" on behalf of Lux.

85. Upon information and belief, Vaccaro has been providing "Competitive Products and Services" to THG-NJ "Customers" on behalf of Lux.

86. Upon information and belief, Vaccaro has solicited and continues to solicit THG-NJ "Customers" to induce the termination or non-renewal of their business with THG-NJ.

87. Vaccaro's false representations and continued violations of her restrictive covenant obligations are serious and legitimate concerns for THG-NJ.

88. THG-NJ agreed to continue to employ Vaccaro in exchange for her execution of the Restrictive Covenant Agreement.

89. THG-NJ then paid Vaccaro more than $60,000.00 when she "retired" with the understanding that she would abide by her restrictive covenant obligations.

90. Vaccaro's refusal to abide by her contractual obligations has caused THG-NJ and its employees significant and irreparable harm.

91. Vaccaro's actions are even more egregious because she previously represented through counsel that she has abided and would continue to abide by her contractual obligations to THG-NJ.

92. THG-NJ relied on her initial representation and refrained from taking further action against Vaccaro only to discover that Vaccaro's representation was false.

93. THG-NJ's business is particularly vulnerable to account executives and other "client-facing" employees who leave employment with THG-NJ and subsequently try to take the customers they serviced from THG-NJ.

94. When an experienced account executive like Vaccaro successfully takes a customer with her, the resulting losses are difficult to measure. This is due in part to the loss of that customer's future referrals and because the specific value of any given customer in the employee

group benefits field is subject to a multitude of variable factors, including employee and vehicle counts and commission rates.

95. Given this difficulty in valuing losses, there is tremendous value to protecting THG-NJ's customer base from further unlawful competition by Vaccaro, as the resulting damage cannot be undone.

96. If Vaccaro is not prevented from continuing to compete with THG-NJ and soliciting its customers, THG-NJ risks losing the customers previously serviced by Vaccaro for THG-NJ and possibly other customers. The resulting harm will not be reversible or easy to quantify.

97. Given Vaccaro's continued refusal to abide by her restrictive covenant obligations, THG-NJ is concerned that Vaccaro plans to damage THG-NJ's business interests even further.

## COUNT I
### (Breach of the Restrictive Covenant Agreement)

98. THG-NJ incorporates by reference Paragraphs 1 through 97 of this Complaint.

99. The Restrictive Covenant Agreement attached hereto as Exhibit 1 is a valid and enforceable contract between THG-NJ and Vaccaro.

100. THG-NJ and Vaccaro exchanged adequate and sufficient consideration in connection with the Restrictive Covenant Agreement.

101. The restrictions on solicitation contained in the Restrictive Covenant Agreement and set forth in Paragraph 39 above are valid and enforceable.

102. Through her counsel's representations, Vaccaro acknowledged her obligation to comply with the restrictions on solicitation contained in the Restrictive Covenant Agreement.

103. Through her counsel's representations, Vaccaro promised to continue to abide with the restrictions on solicitation contained in the Restrictive Covenant Agreement.

104. The restraints imposed by such restrictions are no greater than necessary to protect THG-NJ's legitimate business interests.

105. The restrictions contained in the Restrictive Covenant Agreement are not unreasonably harsh or oppressive in curtailing Vaccaro's legitimate efforts to earn a livelihood.

106. The restraints imposed by such restrictions are reasonable from the standpoint of public policy and are consistent with industry standards.

107. The temporal limitation set forth in the non-solicitation provision of the Restrictive Covenant Agreement is reasonable in light of Vaccaro's duties and responsibilities for THG-NJ and the competitive nature of THG-NJ's business.

108. Vaccaro's conduct described herein, including, but not necessarily limited to, soliciting "Customers" as that term is defined in the Restrictive Covenant Agreement and providing "Competitive Products or Services" to those Customers, constitutes a breach of her obligations under the Restrictive Covenant Agreement.

109. As a consequence of Vaccaro's conduct, THG-NJ has suffered and/or will continue to suffer irreparable harm or loss, and has suffered and will continue to suffer financial and economic loss.

## COUNT II
**(Fraudulent Inducement)**

110. THG-NJ incorporates by reference Paragraphs 1 through 109 of this Complaint.

111. Vaccaro represented to THG-NJ through her counsel that she "has not violated any of her covenants and will continue not to solicit any clients of [THG-NJ]." Ex. 5.

112. This representation was untrue, and Vaccaro knew it was untrue at the time she directed her counsel to make it.

113. Vaccaro never intended to abide by her restrictive covenant obligations to THG-NJ.

114. Vaccaro directed her counsel to make this representation to induce THG-NJ to refrain from enforcing the Restrictive Covenant Agreement against her.

115. THG-NJ relied and acted upon this representation in deciding to refrain from taking further action against Vaccaro at that time.

116. Contrary to her representation, Vaccaro has breached her obligations under the Restrictive Covenant Agreement.

117. Contrary to her representation, Vaccaro has engaged in unfair competition with THG-NJ by soliciting her former THG-NJ Customers and by providing Competitive Products or Services to them.

118. Contrary to her representation, Vaccaro has contacted and solicited THG-NJ's Customers in violation of the Restrictive Covenant Agreement.

119. THG-NJ has suffered damages as a direct and proximate result of its reliance on Vaccaro's false representation.

## REQUEST FOR INJUNCTIVE RELIEF

120. THG-NJ incorporates by reference Paragraphs 1 through 119 of this Complaint.

121. By virtue of the allegations in this Complaint, THG-NJ has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Vaccaro.

122. Unless Vaccaro is permanently enjoined from engaging in any additional misconduct, THG-NJ will be irreparably harmed in the marketplace by the loss of customers and customer goodwill and by damage to its reputation in the insurance brokerage marketplace.

123. Such conduct would result in substantial loss which is unascertainable at this point in time, and future economic loss which is presently incalculable, but which exceeds $75,000.00.

124. THG-NJ has no adequate remedy at law for Vaccaro's misconduct, and Vaccaro has contractually agreed in her Restrictive Covenant Agreement with THG-NJ that THG-NJ shall be entitled to injunctive relief to enforce the restrictions in the agreement, with such relief specifically including a temporary and/or permanent injunction, along with such other equitable relief as may be appropriate under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, THG-NJ respectfully requests the following:

A. Injunctive relief against Vaccaro, whether acting alone or in concert with others, requiring her to comply with her obligations under the Restrictive Covenant Agreement;

B. An order for specific performance requiring Vaccaro to comply with her obligations under the Restrictive Covenant Agreement in accordance with its terms;

C. An order tolling the restricted period under the Restrictive Covenant Agreement and computing such restricted period "from the earlier of (a) the date [Vaccaro] resumes compliance with the covenant, or (b) the date [THG-NJ] is granted injunctive relief by a court of competent jurisdiction enforcing the covenant, reduced by the number of days [Vaccaro] was not in violation of the covenant." Restrictive Covenant Agreement, ¶ 11;

D. An order requiring Vaccaro, and anyone acting in concert with her, to preserve and not destroy or alter in any manner all documents or other information in her possession, custody or control (including, but not limited to, notes, calendar entries,

        invoices, e-mails, text messages, voice messages, and phone records) that may be relevant or discoverable in this litigation, including, but not limited to, all records and any other evidence of Vaccaro's communications with any "Customer" as that term is defined in the Restrictive Covenant Agreement;

E.    An accounting of all income earned or derived from any business activity with any "Customer" as that term is defined in the Restrictive Covenant Agreement or from any business activity which violates the Restrictive Covenant Agreement;

F.    An order permitting THG-NJ to take expedited discovery to determine the scope and nature of Vaccaro's breaches of the Restrictive Covenant Agreement;

G.    Actual damages against Vaccaro in excess of $75,000.00 Dollars, in an amount to be determined at trial;

H.    Punitive damages in an amount to be determined at trial;

I.    Attorneys' fees and costs;

J.    Interest;

K.    For a trial by jury on all issues so triable; and

L.    Any other relief the Court deems appropriate.

This 2nd day of March, 2022.        Respectfully submitted,

**THE HILB GROUP OF NEW JERSEY, LLC**

By: /s/ *Rodney A. Satterwhite*
Rodney A. Satterwhite (VSB #32907)
Igor M. Babichenko (VSB #78255)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(804) 775-1000

(804) 775-1061 (Facsimile)
rsatterwhite@mcguirewoods.com
ibabichenko@mcguirewoods.com